In the Matter of the Claim of GEORGE ALLEN, Appellant-Respondent; KENNETH A. FISHER et al., Appellants-Respondents; NEW WORLD BUILDING CORPORATION et al., Respondents; WORKMEN'S COMPENSATION BOARD, Respondent.

In the Matter of the Claim of BUREN PHILLIPS, Appellant-Respondent; KENNETH A. FISHER, Appellant-Respondent; MICHIGAN MUTUAL LIABILITY COMPANY, Appellant-Respondent; CHARLES E. VAGELE et al., Respondents; WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 5, 1960.

*Carter & Conboy* for George Allen, appellant-respondent.

*Peter M. Pryor* for Buren Phillips, appellant-respondent.

*W. Joseph Shanley* for Kenneth A. Fisher, appellant-respondent.

*Halter Sullivan & Rehfuss* (*John W. Rehfuss* and *John J. Cunningham* of counsel), for Michigan Mutual Liability Company, appellant-respondent.

*Walworth & Harding* (*Fayette C. Walworth* of counsel), for New World Building Corporation and others, respondents.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

HERLIHY, J. On August 4, 1956 the claimants sustained industrial accidents while working for their employer, Kenneth A. Fisher, a mason contractor.

The employer on June 19, 1956 applied to Gilbert H. Robert, Inc., the business of which in part was selling insurance for fire, automobile and workmen's compensation coverage. The agency wrote the fire insurance with a company for which it acted as agent and sent an application for the automobile and workmen's compensation coverage to the Michigan Mutual for which it acted as broker and had no power to bind without its express consent. The company on June 21, 1956 accepted

the automobile coverage but refused the workmen's compensation as not conforming to the requirements of its underwriting policy. It would appear that the insurance agency did nothing further as to the compensation coverage on behalf of Fisher until August 3 when a "producer's consultant" for the Michigan Mutual visited the insurance agency. His duties were "The development and expansion of brokerage accounts for the company". In the course of the visit, the insurance agency directed to his attention the Fisher account, particularly that his company had accepted the automobile liability, and requested his intervention in having it take the compensation coverage. As a result of this conversation, at the suggestion of the company representative, a binder was prepared, signed by the agency and eventually sent by the consultant to the New York office with sufficient memorandum thereon to ask reconsideration of its original refusal of the coverage. It is not disputed that there was no written acceptance of the binder as required by its terms. A lengthy record was developed devoted in considerable detail to the conversations allegedly between the consultant and the representatives of the agency attempting to establish that the coverage became effective on the date of August 3 and which resulted in a finding by the board of an oral binder making the Michigan Mutual responsible for the claims.

We are not concerned here with the duties and responsibilities which exist between the insured and his insurance agent and the requirements, if any, of the agent to notify the insured when there has been a denial of coverage. Suffice it is to say that from June 19, 1956 to the date of the accident, August 4, Fisher had no workmen's compensation insurance although the record infers that he thought he had such coverage but he admitted he had not received a policy or received a statement for the same.

The fundamental and important problem here is the capacity in which the insurance agency was engaged. It was an agent for the fire insurance company and accordingly wrote the policy and thereafter notified the company. It was a broker for the automobile and compensation applications. Upon receiving written consent from the company, the insurance agency issued the automobile policies but never was such written consent received for permission to write compensation.

Section 110 of the Insurance Law defines an insurance agent as one authorized by an insurance company *to act as its agent* in the solicitation of insurance.

Section 111 of the Insurance Law defines an insurance broker as one authorized *on behalf of the insured* to solicit insurance.

The historical note under this section states: "An insurance broker is for most purposes deemed an agent of the insured". (Tentative Draft, 1937, prepared by Ins. Dept., p. 101, comment.)

While not applicable here, section 121 further establishes the relation of insurance broker as being on behalf of the insured and not the insurance company.

. With this background we examine the finding of the board that the oral statements of the "producer's consultant" of the insurance company constituted a binder on behalf of the employer Fisher. A conflict exists between what the insurance agent thought following the conversation on August 4. It is admitted that the agency's relationship with the Michigan Mutual was that of broker — the employer Fisher had no such knowledge nor was he aware of its meaning — and that no binder authorizing the coverage was ever signed. The witness for the agency inferred he thought after the conversation with the representative of the company it accepted or would accept the binder and following the accident with which we are concerned, wrote the company that it was liable for the claims. The record shows that the company representative on his August 3 visit signified he would send the second binder with a letter of explanation and in words or substance, try to get the coverage. As to this vital facet of the case we quote verbatim from the testimony of the owner of the insurance agency, Mr. Gilbert H. Robert:

"At that time that I spoke to Mr. McGarrity I knew that he did not accept the line as binding upon the company.

\* \* \*

"Mr. McGarrity never did accept a risk verbally, nor did he ever sign a binder to my knowledge. The binder request which is what should appear in all of these letters of ours, was delivered to Mr. McGarrity after a secretary in my office prepared them.

\* \* \*

"Q. And I ask you, sir, referring to that letter, if it isn't a fact that on August 3, 1956, Mr. McGarrity verbally accepted the Fisher compensation risk? \* \* \* A. No, he did not. ·

\* \* \*

"Q. Mr. Gilbert [Robert], you understood on July 25, 1956 that the Michigan Mutual would not accept the Fisher risk, didn't you? A. That's correct."

This testimony was given on June 19, 1957, almost a year subsequent to the letters of August, 1956.

There was no substantial testimony of acquiescence by the Michigan Mutual Liability Company as to oral binders for workmen's compensation insurance or that its representative had the authority, actual or implied, to orally bind the company. If further fulcrum is needed, the allocutions of Gilbert H. Robert, *supra*, completely negate any basis for such finding.

The cases relied upon by the respondent are not applicable to the present facts.

In *Matter of Sherri* v. *National Sur. Co. of N. Y.* (243 N. Y. 266) the insured made application to her broker who in turn made application to the respondent and *received a binder*, subject to certain conditions.

In *Matter of Kornblatt* v. *Dubin's Bakery* (263 App. Div. 770) a *fifteen-day binder had been issued* and the question therein concerned cancellation.

*Matter of Horn* v. *Malchoff* (276 App. Div. 683) likewise involved a *binder being issued* and thereafter the question of cancellation and the rights of defendant insurance companies.

It is quite impossible to cancel something not issued and in force, which is the present situation. The obligations ordinarily imposed upon an insurance company as to its insured — the employer — never came into being under the present facts. Given the most propitious interpretation, there was no coverage and consequently no liability as to the appellant Michigan Mutual.

The decision should be reversed and the matter remitted.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Decision reversed and the matter remitted, with one bill of costs to the appellant against respondents New World Building Corporation, Century Indemnity Co., and Charles E. Vagele and Howard C. Vagele and Manufacturers Casualty Insurance Company.